# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| ERVIN EQUIPMENT INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. 4:15-cv-104 |
| | ) |
| WABASH NATIONAL CORP., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This case involves an attempted termination of a dealership agreement between a manufacturer of semitrailers, Wabash National Corporation, and Ervin Equipment, Inc., one of its dealers. Ervin brought this action to stave off the impending termination. Wabash has responded with two counterclaims: the first alleges that this is a "sham" litigation brought for an impermissible purpose; relatedly, the second counterclaim is for abuse of process. Ervin seeks the dismissal of these two counterclaims. Because these counterclaims fail to state a claim under Federal Rule of Civil Procedure 12(b)(6), the motion [DE 56] is granted.

### Factual Background

I have already set forth the underlying facts of this case in my opinion and order dated May 17, 2016, denying Ervin's motion for preliminary injunction and granting in part and denying in part Wabash's motion to dismiss. [DE 36 at 2-6.] As such, I will

1

only briefly discuss the background for this motion.

Ervin originally filed a complaint and amended complaint asserting three claims against Wabash for its alleged violation of various Indiana statutes related to the manner in which it sought to terminate the Dealership Agreement. [DE 1, 16.] Wabash responded with a motion to dismiss. [DE 20.] I dismissed two of Ervin's three claims, but found that Ervin's complaint did state a proper claim under the Indiana unfair practices statute, Ind. Code § 9-32-13-27. [DE 36 at 8-13.] In essence, I found that Wabash needed to provide proper notice before terminating the dealership agreement and that such a termination could only be based on good cause— both of which are questions of fact to be determined by the jury. But I also found in that same order that Ervin's motion for a preliminary injunction did not meet the standards under Rule 65, and thus I refused to force Wabash to continue the Dealership Agreement pending a final determination in the case.

Ervin then filed a motion for leave to file a second amended complaint. Ervin sought to add a claim under the Sherman Act alleging a conspiracy among Wabash and certain Wabash dealers to terminate Ervin and impose illegal territorial restraints on Wabash dealers. [DE 26.] Magistrate Judge Paul R. Cherry, applying the same standard as on a Rule 12(b)(6) motion, held that Ervin alleged sufficient facts to state its antitrust claim and thus allowed the second amended complaint to go forward. [DE 50.]

Wabash filed an answer to the second amended complaint, and also filed two counterclaims. [DE 53, 54.] The document is entitled "Counterclaims of Defendant

Wabash National for Sham Litigation and Abuse of Process." [DE 54.] The first counterclaim—for sham litigation and violation of federal and state antitrust laws—alleges that Ervin has used this litigation "to intimidate, harass and eliminate competition in the market for used dry van semitrailers," that Ervin's conduct violates 15 U.S.C. § 2 and Ind. Code §24-1-1-1 *et seq.*, and that the sham litigation has harmed Wabash and competition. [DE 54 at 10-11.] The second counterclaim alleges that Ervin has committed an abuse of process by asserting its claims "for an ulterior and improper purpose" and its actions constitute a "misuse and misapplication of process." [DE 54 at 11-12.]

## Discussion

Ervin moves to dismiss Wabash's counterclaims under Federal Rule of Civil Procedure 12(b)(6). To survive the motion, the counterclaims "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks and citations omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept as true all factual allegations in the counterclaims and draw reasonable inferences in favor of Wabash, I am not required to accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663; *see also McCauley v. Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Indeed, Wabash must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility

3

determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

**Count 1 - Sham Litigation/Attempt to Monopolize**

Count 1 is entitled "sham litigation in violation of federal and state antitrust law." [DE 54 at 10.] Wabash alleges that Ervin knew it had no basis to allege a breach of contract, had little hope of surviving a dispositive motion on the related claims, and made up fictitious "facts" to support the Sherman Act claim. [DE 54 at 2-7.] Wabash also specifically alleges Ervin's conduct has violated 15 U.S.C. § 2 and Ind. Code § 24-1-1-1 *et seq.* [*Id.* at 11.] This counterclaim fails for two main reasons: (1) Ervin's claims are not "objectively baseless" so as to constitute "sham litigation" outside the protection of the *Noerr-Pennington* doctrine; and (2) Wabash did not plead plausible facts to show that Ervin's lawsuit constitutes an "attempt to monopolize."

"Sham litigation" is not a claim by itself, but rather an exception to the *Noerr-Pennington* doctrine. *Noerr-Pennington* provides immunity under the First Amendment to Ervin from having an antitrust claim asserted against it based on its petitioning this court for relief. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). However, the doctrine does not provide antitrust immunity to "sham" lawsuits.

The Supreme Court outlined a two-part definition of sham litigation to determine whether the party is entitled to immunity under *Noerr-Pennington*. First, to be a sham, the suit "must be objectively baseless in the sense that no reasonable litigant

4

could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). Second, "the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the government *process* — as opposed to the *outcome* of that process — as an anticompetitive weapon." *Id.* at 60-61 (emphasis in original, citations and quotations omitted). "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* at 60.

While the question of whether litigation is a sham could be a fact question for the jury, as the Supreme Court explained in *Professional Real Estate Investors*, where "there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause [and thus *Noerr-Pennington* applicability] as a matter of law." *Professional Real Estate Investors*, 508 U.S. at 63. The "classic" example of sham litigation is "the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991) (citation omitted).

Here, Ervin's claims are not objectively baseless. While I dismissed two of the three claims in the original complaint and denied the motion for preliminary injunction, those rulings were not slam dunks. Rather, they required a significant amount of research and analysis. And, in analyzing whether to grant Ervin's motion to amend the complaint, Magistrate Judge Cherry conducted an extensive analysis under the same

5

standard as Rule 12(b)(6), and found Ervin could properly amend the complaint and state a claim for relief under the Sherman Act. Thus at this stage in the proceedings, Ervin has two claims that were challenged and still remain pending (for violation of the Indiana unfair practices statute and the Sherman Act). This fact alone strongly militates against any conclusion that Ervin's lawsuit is objectively baseless. Other courts are in accord with this.

For example, in *Arnett*, the district court granted a motion to dismiss a claim of sham litigation finding where "the trial court has twice rejected motions to dismiss" and the state court allowed the filing of a third amended complaint, "[t]he suit, as a matter of law, is not 'objectively baseless.'" *Arnett Physician Group, P.C. v. Greater LaFayette Health Servs., Inc.*, 382 F.Supp.2d 1092, 1097 (N.D. Ind. 2005). Similarly, in *Icahn v. Raynor*, 2011 N.Y. Slip Op. 51416 (U), at *6 (N.Y. Sup. Ct. June 16, 2011), the court reasoned because it already denied a motion to dismiss, "[t]his court has thus not found the claims in the . . . lawsuit to be objectively baseless," and in *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F.Supp.2d 455, 475 (E.D. N.Y. 2008), the court reasoned because "plaintiff's claims had enough merit to survive defendants' motion to dismiss," they were not objectively baseless even though they eventually failed to survive summary judgment.

Only if I find that the lawsuit is objectively meritless (which I haven't), may I then inquire into Ervin's subjective intent in an exploration of whether the intent was not to win, but to interfere directly with the business relationships of a competitor.

*Professional Real Estate Investors*, 508 U.S. at 60-61. But let's suppose for the moment that the lawsuit was objectively meritless. Wabash has also failed to establish the second element of sham litigation—that the litigation is being used to "conceal[] an attempt to interfere *directly* with the business relationships of a competitor, through the use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Arnett*, 382 F.Supp.2d at 1096-97 (emphasis in original) (internal citation and punctuation omitted).

Wabash's conclusory allegations that Ervin is using the litigation process as a sham and wants to impose undue costs on Wabash and other Wabash dealers are not supported by facts and just don't make sense when I step back and look at this lawsuit. It seems pretty clear that Ervin is suing to preserve its right to be a Wabash dealer and to continue its relationship with Wabash. Ervin seems to be genuinely seeking the outcome solicited in filing this lawsuit. It just doesn't jibe that Wabash now asserts in its counterclaim that Ervin is really only trying to intentionally hurt Wabash or other competitors. For all of these reasons, Ervin's lawsuit is not objectively baseless, and it is entitled to the immunity provided by the *Noerr-Pennington* doctrine.

Wabash has also failed to state a proper antitrust claim. Wabash refers to the Sherman Act, 15 U.S.C. § 2, and the corresponding Indiana statutes, Ind. Code 24-1-1-1 *et seq.* [DE 54 at 11.] The Seventh Circuit has warned that "section 2 must be used with the greatest of caution" as "[a]ction that injures rivals may ultimately injure consumers, but it is also perfectly consistent with competition, and to deter aggressive conduct is to

deter competition." *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir. 1989) (quotation omitted).

Section 2 of the Sherman Act prohibits monopolization and attempted monopolization by a single firm. In its response, Wabash argues it has stated a plausible counterclaim for attempted monopolization by Ervin engaging in predatory conduct with a dangerous probability Ervin would achieve monopoly power through its conduct. To show a Section 2 violation based on attempted monopolization, Wabash must plead and prove: (1) Ervin has engaged in predatory or anticompetitive conduct, (2) with a specific intent to monopolize, and (3) has a dangerous probability of achieving monopoly power. *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993). Simply put, Wabash has failed to allege any facts in the counterclaims which, if proved, would show that Ervin has engaged in exclusionary conduct with a dangerous probability of achieving monopoly power if it were to remain a Wabash dealer.

Most glaringly, the counterclaim contains no facts alleging that Ervin currently possesses monopoly power in the market for used dry van semitrailers, or a finding that Ervin has a dangerous probability of achieving monopoly power if it were to remain a Wabash dealer. The purpose of establishing market power is to find out whether Ervin could control the market and therefore affect competition. As such, Ervin would need a substantial percentage of the sales in the used dry van market to have market power. In section 2 monopoly cases, "a substantial percentage of the sales is usually at least 50%." *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 666-67 (7th Cir. 1987); *see also*

*Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1250 (11th Cir. 2002) ("a market share at or less than 50% is inadequate as a matter of law to constitute monopoly power.").

While Wabash argues it need only allege generalities at this stage of the proceedings (not specific market share or probability of achieving a certain market share), the caselaw cited by Ervin proves otherwise. The Seventh Circuit found, "[plaintiffs] did not establish market power. They failed as a matter of law. This failure makes every other element of the [tying] anti-trust case irrelevant." *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 671 (7th Cir. 1985). "To evaluate a defendant's market power, 'at the very least it must be shown how much of the relevant market a defendant controls.'" *Nat'l Ass'n of Investors Corp. v. Bivio, Inc.*, No. 11-cv-02435-WJM, at *5 (D. Colo. Jan. 28, 2013) (quoting *Shoppin' Bag of Pueblo, Inc. v. Dillon Cos., Inc.*, 783 F.2d 159, 161-61 (10th Cir. 1986)); *see also Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 972-73 (9th Cir. 2008) ("A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint."). "Without any quantitative or qualitative allegations of market share, PNY may not pursue claims for attempted monopolization of the flash memory devices or systems market." *PNY Techs., Inc., v. Sandisk Corp.*, No. C-11-04689 YGR, 2012 WL 1380271, at *9 (N.D. Cal. Apr. 20, 2012); *see also Arnett*, 382 F.Supp.2d at 1094-95.

Wabash's allegation that, upon information and belief, Ervin is the "largest seller of used dry van semitrailers in the country" [DE 54 ¶ 39] is not enough because it gives no information at all about Ervin's market share in the nationwide market. Ervin could

be a top seller, and yet still hold a fraction of the market—this seems especially likely to me since Wabash alleges the market for used dry van semitrailers is "an open market" with many participants. [DE 54 ¶¶ 19, 26, 37.] Because Wabash has failed to identify facts from which I can infer that Ervin has sufficient market power to create a monopoly, or creating a dangerous probability of achieving a monopoly, the antitrust counterclaim should be dismissed. *42nd Parallel North v. E. Street Denim Co.*, 286 F.3d 401, 406 (7th Cir. 2002).

There is yet another reason why Wabash's claim under Section 2 of the Sherman Act cannot go forward and that is it has not alleged there are high barriers to entry in the used dry van market. The Seventh Circuit has "long held that low barriers to competition demonstrate the absence of monopoly power." *Indiana Telecom Corp., Inc. v. Indiana Bell Tel. Co., Inc.*, No. 97-1532-C, 2001 WL 1168169, at *11 (S.D. Ind. Sept. 25, 2001) (citing *Am. Academic Suppliers, Inc. v. Beckley-Cardey, Inc.*, 922 F.2d 1317, 1320-21 (7th Cir. 1991)). Here, Wabash has alleged "the market for dry van semitrailers sold in the United States is a demonstrably open market, with low barriers to entry and many vigorous competitive participants. In such a market, holding a particular share of sales is economically and legally irrelevant." [DE 54 ¶ 19.] This is an admission that there are low barriers to competition in this market which essentially means that Wabash has pled its way out of court. In sum, the antitrust counterclaim is implausible and must be dismissed.

**Count 2 - Abuse of Process**

10

Count 2 is titled "Abuse of Process" but because there is no federal cause of action for abuse of process, I'll look to state law abuse of process claims to evaluate that count. *Hart v. Mannina*, 798 F.3d 578, 593-94 (7th Cir. 2015); *United States Express Lines Ltd. v. Higgins*, 281 F.3d 383, 393 (3d Cir. 2002) ("victims of such misconduct may, in appropriate circumstances, bring suit to recover damages under state causes of action.").

Under Indiana law, abuse of process requires proof of: "(1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding.'" *Hart*, 798 F.3d at 593 (quoting *Lindsay v. Jenkins*, 574 N.E.2d 324, 326 (Ind. Ct. App. 1991)). For an abuse of process claim:

> "If a party's acts are procedurally and substantively proper under the circumstances then his intent is irrelevant." *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005). "A party may not be held liable for abuse of process if the 'legal process has been used to accomplish an outcome which the process was designed to accomplish.'" *Id.* A party's intent is irrelevant where his acts are procedurally and substantively proper under the circumstances. *Reichart v. City of New Haven*, 674 N.E.2d 27, 31. *Id.* (citation omitted).

*Apex Colors, Inc. v. ChemWorld Int'l., Ltd., Inc.*, No. 2:14-CV-273, 2015 WL 5311403, at *2 (N.D. Ind. Sept. 10, 2015). A "party may not be held liable for abuse of process if the legal process has been used to accomplish an outcome which the process was designed to accomplish, even though done with bad intentions." *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, No. 3:11-cv-250-JD, 2012 WL 4050301, at *7 (N.D. Ind. Sept. 12, 2012) (quotation omitted). Furthermore, "the claim of abuse of process was not

11

intended to address allegations of a frivolous lawsuit." *Apex Colors*, 2015 WL 5311403, at *3 (citing *Nat'l City Bank, Ind. v. Shortridge*, 689 N.E.2d 1248, 1253 (Ind. 1997) ("This standard contemplates something more on the part of an attorney filing suit than a questionable belief as to the merits of a case, or the failure to fully investigate all the facts prior to initiating suit.")).

While it is true that Wabash has alleged that Ervin had an ulterior motive in pursuing this litigation, [DE 54 at 11-12], the counterclaim is devoid of any allegation of misuse of the legal process. There is no indication that Ervin has not complied with the procedural rules, including filing the complaint, amended complaint, and the motion for preliminary injunction. From my perspective, Ervin has not violated any procedural rules, and I see no misuse of the legal process.

It seems to me that if it becomes clear that Ervin's claims do lack support, or if it comes out that Ervin intentionally falsified facts alleged in the amended complaint, then the appropriate remedy for Wabash would be a claim for sanctions under Rule 11. Rule 11(b) provides that by presenting to the court a pleading, the attorney or party is representing that it is "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and the claims "are warranted by existing law" and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1), (2), (3). If the Court were to determine that Rule 11(b) had been violated, it could then impose an appropriate sanction on a party or attorney. Fed. R. Civ. P. 11(c)(1).

## Conclusion

For the reasons set forth above, Ervin's motion to dismiss Wabash's counterclaims [DE 56] is **GRANTED** and both counterclaims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

ENTERED: January 31, 2017

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
